IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEFAN FREETH,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 14-2274** |
| v. | : | |
| | : | |
| **ZURICH AMERICAN INSURANCE CO.,** | : | |
| **Defendant.** | : | |

**MCHUGH, J.**                                                                                                                   **JULY 15, 2015**
**MEMORANDUM**

   This case involves the complex and conceptually muddled area of Pennsylvania's law on automobile insurance coverage. At issue is Zurich American Insurance Company's ("Zurich") compliance with the technical requirements for lowering limits of uninsured motorist ("UM") and underinsured motorist ("UIM") coverage. That narrow question has great practical significance, because, depending on the answer, Plaintiff Stefan Freeth, an employee of Road-Con, Inc. ("Road-Con"), either can seek up to one million dollars in benefits, or will be limited to collecting thirty-five thousand dollars for a serious work-related accident. The precise question presented is whether Zurich's use of a general Summary Form, when coupled with certain Pennsylvania specific forms, was legally sufficient to elect lower limits of uninsured coverage as required by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1701, et seq. Although the issue is a close one, because Defendant failed to procure a written, express election of reduced UM coverage, I conclude that Zurich's Business Automobile Insurance Policy ("the Policy") does not satisfy the requirements of Pennsylvania law. Consequently, by operation of law, Defendant is required to provide UM benefits in the amount of one million dollars to Freeth in connection with the underlying action.

1

I.    **Factual Allegations and Procedural Background**

On September 21, 2012, Plaintiff Stefan Freeth was working from his truck in the course of his employment with Road-Con, performing repairs on the Northeast Extension of the Pennsylvania Turnpike. Freeth Compl. at ¶ 17. While standing on the tailgate of his vehicle in the northbound lanes, a southbound tractor trailer struck a traffic sign, causing it to propel into Plaintiff's left leg, resulting in "serious, disabling injuries." Id. ¶ 17–19. The tractor trailer has not been identified, giving rise to a claim for uninsured motorist benefits.

There is no dispute that Mr. Freeth is eligible to receive UM benefits.[1]  The sole question is the limit of coverage. The face of the Policy provides for liability coverage with a limit of one million dollars and UM/UIM in the amount of $35,000. Id. at 5; Plaintiff's Exhibit A; Defendant's Exhibit B & C.

After the accident, Freeth submitted a claim for UM coverage in the amount of $1,000,000.00 to Defendant Zurich, the commercial auto insurer for Road-Con, contending that Zurich's failure to follow proper procedures in the selection of coverages rendered the Policy's UM limit equal to the liability limit, by operation of law. Zurich responded that it has no obligation to provide Plaintiff with UM benefits in excess of $35,000.00, resulting in this declaratory judgment action. The parties have cross-filed for summary judgment, asking the Court to choose between these competing interpretations of the Policy and documents leading to its formation.

II.   **The Insurance Policy**

Pennsylvania, as a matter of public policy, favors the inclusion of adequate amounts of UM benefits in auto insurance policies. Therefore, the limits of UM coverage are deemed equal

---

[1] Zurich concedes that although Plaintiff is not a signatory, as a Road-Con employee, he is insured under the Policy, giving him the right to argue the extent of his coverage. See Johnson v. Pennsylvania Nat. Ins. Companies, 527 Pa. 504, 508, 594 A.2d 296, 298–99 (1991).

to the limits of liability coverage, unless the insured has requested in writing that lower limits of UM coverage are sought.  In this case, Zurich relies upon a Summary Form meant to encompass the requirements of each state, supplemented with state-specific forms where states have additional technical requirements for waiver/rejection or reduced coverage.  Plaintiff argues that the Uninsured/Underinsured Motorists Coverage Selection/Rejection Limits Summary Form ("Summary Form"), signed by the President of Road-Con,[2] was legally insufficient under Section 1734 of the Pennsylvania MVFRL in violation of state law.  Specifically, Plaintiff contends that Defendant's Summary Form simply lists the UM coverage limits for every state, which fails to satisfy Pennsylvania's specific statutory requirements.  Zurich counters that the Summary Form qualifies as a written election of lower UM limits, in full compliance with the PA MVFRL.

The Summary Form at the center of the dispute reads, in relevant part:

**UNINSURED/UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION/LIMITS SUMMARY FORM**

. . .

Your policy(s) contains Uninsured/Underinsured Motorists Coverage Selection/Rejection and Limits Options forms which allow you to reject coverage or to select various limits and coverage options.  Your signature on this summary form indicates that you have read and understand each state-specific form and that the selections or rejections marked on the state forms have been accepted by you.

| **OPTION II State Min UM/UIM – Combined Single Limit** ||
|---|---|
| **STATE** | **Selected Limits** |
| . . . ||
| [alphabetical listing of states] | [dollar amount of coverage limits] |
| . . . ||
| Pennsylvania* | $35,000 |

---

[2] Named insureds under commercial policies are permitted to make coverage elections that govern UM/UIM coverage for employees.  See Travelers Indem. Co. of Illinois v. DiBartolo, 171 F.3d 168, 172 (3d Cir. 1999) (predicting how the Pennsylvania Supreme Court would rule).

> . . .
>
> **Please Note:  * Indicates the attached State Form MUST be signed by the First Named Insured.**
>
> **Failure to return the Uninsured/Underinsured Motorist (UM/UIM) Selection/Rejection Summary Form and required state-specific forms prior to the policy inception dates will result in the policy being issued with coverage limits imposed by the operation of state law.  In such event, you shall reimburse us for the payments made on UM/UIM claims.  The amount of your reimbursement obligation shall be equal to the amount of loss paid in excess of the IM/IUM limits shown in the Automobile Liability Limits section of the proposal.**
>
> THIS SUMMARY IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION FORM FOR UM AND UIM COVERAGE.  <u>YOU ARE REQUIRED TO DO SO.</u>
>
> . . .
>
> **I acknowledge that I have reviewed each individual state's selection/rejection form, I have made the elections indicated and that I have the authority to sign this form on behalf of all Named Insureds on those policies listed above.**

Defendant's Exhibit C.

Defendant also emphasizes that the above Summary Form followed a cover letter from Zurich Account Manager, Dave Russow, explaining the purpose of the Summary Form as follows:

> Enclosed please find the following forms that reflect the coverage limits requested for Uninsured Motorists (UM) Coverage . . . *The Summary Form was designed to reduce the number of state-specific forms required to be signed and dated by the First Named Insured* . . . Because you have requested Uninsured/Underinsured Motorist coverage with limits lower than your Auto Liability limit, we have prepared a package of selection/rejection forms that includes states in addition to those in which your vehicles are garaged.
> . . .
>
> **Your signature on the Summary Form indicates that you have read and understand each state-specific form and that the selections or rejections marked on the state-specific forms have been accepted by you.  Failure to return the signed Summary Form and required state-specific forms prior to the policy inception date(s) may result in the policy being issued with coverage limits imposed by the operation of state law.**

<u>Id.</u>

In addition to signing the Summary Form, Road-Con also signed the following series of Pennsylvania-specific forms: (1) Pennsylvania IMPORTANT NOTICE; (2) Uninsured Motorist Protection Option Pennsylvania; and (3) Underinsured Motorist Protection Option Pennsylvania. See Defendant's Exhibit C & G.  Significantly, these three Pennsylvania-specific forms make no mention of the $35,000 UM limit.  The signed "Pennsylvania IMPORTANT NOTICE" form, found in the text of 75 Pa.C.S. § 1791, simply states that the named insured is aware of coverage options that must be made available pursuant to Pennsylvania law.  See 75 Pa.C.S. § 1791[3] and Defendant's Exhibit G.  The signed "Uninsured Motorist Protection Options Pennsylvania" and the "Underinsured Motorist Protection Options Pennsylvania" forms reject stacked limits on UM and UIM coverage.  Defendant's Exhibit C at U-CA-555-B–556-B.  None of the forms specific to Pennsylvania allow for an explicit request for reduced UM coverage.

**III.    Discussion**

*A.  Summary Judgment Standard*

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  When confronted with cross-motions for summary judgment, the " 'court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.' "  Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting Charles A. Wright, Arthur R. Miller et. al, 10A Fed. Prac. and Proc. § 2720 (3d ed. 1998)).  Here, the parties' dispute concerns the proper interpretation of an insurance contract,

---

[3] Pennsylvania insurers create a presumption that the insured has been advised of available benefits and limits by including the IMPORTANT NOTICE form as part of the original policy application. 75 Pa.C.S. § 1791 ("It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage . . . [text of the "IMPORTANT NOTICE" form]").

presenting a pure question of law for the Court. See 401 Fourth St., Inc. v. Investors Ins. Grp., 583 Pa. 445, 453 (2005).

   B. *Legal Analysis*

The parties agree that the PA MVFRL requires every motor vehicle policy issued in Pennsylvania to include an offer of UM and UIM coverage. Specifically, Section 1731 of the MVFRL provides, in relevant part:

> No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S.A. § 1731.[4] As referenced above, companion Section 1734 of the MVFRL allows a named insured to elect limits of UM or UIM coverage in an amount equal to or less than a policy's liability limit. 75 Pa.C.S.A. § 1734 ("A named insured may request in writing the issuance of coverages under section 1731 . . . in amounts equal to or less than the limits of liability for bodily injury.").

The parties further agree that Nationwide Insurance Co. v. Resseguie, 980 F.2d 226, 231 (3d Cir. 1992) provides the controlling interpretation of Sections 1731 and 1734 of the PA MVFRL. In Resseguie, the Third Circuit predicted how the Pennsylvania Supreme Court would interpret the relevant sections of the PA MVFRL:

> § 1731 is a simple statement whose plain meaning is apparent from its language. It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in § 1734.

---

[4] 75 Pa.C.S.A. § 1731 also notably controls compliance with the MVFRL's requirements for waiver or rejection of UM/UIM coverage, even providing the specific form those written rejections must take. Those aspects of the statute are not at issue in this case.

> . . .
>
> § 1734's language is plain and the Pennsylvania General Assembly's intention is clear. By its terms, a named insured may lower her statutorily provided UIM coverage limits by requesting in writing of her insurer to do so. The insurance company's obligation to issue a policy with [UM/UIM] coverage in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a written request.

Id. at 231. The Third Circuit concluded that Section 1734 presents "a very simple, clear-cut rule for an insurance company to follow—to lower the limits it must insist on a written authorization signed by the named insured." Id. at 232. The Supreme Court of Pennsylvania confirmed the Third Circuit's prediction in 2007, expressing agreement with the Resseguie Court's interpretation of Sections 1731 and 1734. See Blood v. Old Guard Ins. Co., 594 Pa. 151, 164, 934 A.2d 1218, 1226 (2007) ("As a general proposition, we agree with the characterization of Sections 1731 and 1734 offered by the Third Circuit in Nationwide Ins. Co. v. Resseguie, 980 F.2d 226, 230 (3d Cir. 1992)."). In sum, "sections 1731 and 1734 plainly state that an insurance policy must provide UM/UIM coverage limits that are equal to the bodily injury liability limits unless the insured completes a proper request for reduction of the UM/UIM coverage limits." Weilacher v. State Farm Mut. Auto. Ins. Co., 65 A.3d 976, 988 (Pa. Super. Ct. 2013).

Zurich is correct that "unlike section 1731, section 1734 does *not* dictate that the opportunity for reduction, or a form to that effect, be presented when a policy is issued. It merely provides that a reduction of this kind *may* be accomplished, but only by a writing which constitutes a request by a named insured." Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 639 (3d Cir. 2000).[5] At the same time, however, Pennsylvania case law establishing minimum requirements for Section 1734 elections, as "requests for specific limits coverage, in contrast to outright waiver/rejection, require not only the signature of the insured, but also, an express

---

[5] The Third Circuit, in a non-precedential opinion, also acknowledged that an insured's written request for reduced coverage under Section 1734 may take "any form." Fire & Cas. Co. of Connecticut v. Cook, 155 Fed. App'x 587, 589 (3d Cir. 2005).

designation of the amount of coverage requested, thus lessening the potential for confusion." Lewis v. Erie Ins. Exch., 568 Pa. 105, 123, 793 A.2d 143, 153 (2002); see also Erie Ins. Exch. v. Larrimore, 987 A.2d 732, 737 (Pa. Super. Ct. 2009) ("Although no specific form is required or prescribed by the MVFRL, to be a valid and enforceable written request under § 1734, the writing must: (1) manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits; (2) be signed by the named insured; and (3) include an express designation of the amount of uninsured and underinsured coverage requested.") (internal quotations and citations omitted).

Regardless of actual intent, the Superior Court of Pennsylvania has explained on multiple occasions that "a signature on an insurance application 'merely evidences the [insured's] acceptance of the policy ...,' and 'cannot amount to a statutorily enforceable waiver of uninsured/underinsured motorist coverage limits equal to bodily injury limits.'" Larrimore, 987 A.2d at 738 (citing Motorists Ins. Companies v. Emig, 664 A.2d 559, 565 (Pa. Super. Ct. 1995)).[6] Similarly, an insured's application signature combined with the § 1791 Important Notice cannot "operate to satisfy the written request for lower limits requirement of § 1734 as 'Section 1791 does not provide a mechanism for requesting UM/UIM coverages.'" Id.

Finally, the history and purpose of the PA MVFRL provides meaningful context for Section 1734 disputes.

> The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence. Thus, an insured who purchases $100,000 of liability coverage to protect others from his negligence, must, by law, be offered the option of purchasing up to $100,000 of underinsured motorist coverage to protect himself and his additional insureds from the risk that they will be severely injured by a negligent driver who has liability coverage in an amount insufficient to fully compensate them for their injuries.

---

[6] The Court of Appeals appeared to reach the same conclusion in Cook, 155 F. App'x at 593.

8

Resseguie, 980 F.2d at 231–232 (citing Wolgemuth v. Harleysville Mut. Ins. Co., 35 A.2d 1145, 1149, appeal dismissed, 520 Pa. 590, 551 A.2d 216 (1988)).  Here, Plaintiff Freeth falls squarely within the class of insureds that the Pennsylvania General Assembly aimed to protect in passing the MVFRL.  Id.  The Resseguie opinion further notes that the statute "evolves from public policy considerations and must be broadly and liberally construed to accomplish this purpose," and, conversely, the portion of the statute that allows an insured to reject UM coverage "*detracts from the public policy considerations and must therefore be narrowly and strictly construed.*"  Id. at 232 (citing Johnson v. Concord Mut. Ins. Co., 450 Pa. 614, 300 A.2d 61 (1973)).  Pennsylvania case law is equally clear that one "of the objects of the MVFRL to be effected by this liberal construction is affording the injured claimant the greatest possible coverage."  Emig, 664 A.2d at 566.  And more generally, in "close or doubtful insurance cases, it is well-established that a court should resolve the meaning of insurance policy provisions or the legislative intent in favor of coverage for the insured."  Danko v. Erie Ins. Exch., 630 A.2d 1219, 1222 (Pa. Super. Ct. 1993) aff'd, 538 Pa. 572, 649 A.2d 935 (1994) (citing Motley v. State Farm Mut. Auto. Ins. Co., 502 Pa. 335, 340, 466 A.2d 609, 611 (1983)).

In Larrimore, the Superior Court of Pennsylvania held that a detailed and executed eight-page insurance application, combined with a § 1791 "Important Notice" did not meet the § 1734 writing requirement.  Larrimore, 987 A.2d at 734–43.  The application set forth specific coverage limits (e.g., UM coverage in the amount of $15,000.00 and bodily injury liability coverage in the amount of $300,000.00 per person).  Id. at 734.  It also included a certification immediately preceding the signature line where the applicant attested to giving true and complete answers, as well as being "offered alternative coverage limits and those listed on this application reflect my choices."  Id. at 734.  The Court found it particularly significant that the defendant insurance

company usually employed a special form for requesting lower UM/UIM limits, but failed to use it in Larrimore's case, noting that the existence of the form constituted "the functional equivalent of an admission that something more than a signed application and signed § 1791 'Important Notice' is needed to comply with the written request for lower coverage limits requirement of § 1734." Id. at 740.  The Court concluded that there was no valid Section 1734 request, and the disputed coverage limits were accordingly "deemed equal to the bodily injury liability coverage limits." Id. at 741–43.

In contrast, in Orsag v. Farmers New Century Ins., 609 Pa. 388, 390, 15 A.3d 896, 897 (2011), the insured filled out an insurance application that "was mostly pre-printed, but contained blank spaces where requested information was filled in by hand."  The requested information included explicit coverage selections, and the insured "requested bodily injury liability coverage of $100,000 per person and uninsured/underinsured motorist (UM/UIM) coverage of $15,000 each for two vehicles." Id.  The insured signed the application, which included the following language, "I understand that the coverage selection and limit choices here or in any state supplement will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing." Id.  Recognizing that Section 1734 compliance can take any form, the Supreme Court of Pennsylvania found that this language combined with the "express designation of $15,000 in UM/UIM coverage" satisfied the requirements of the MVFRL, because "the most effective manner in which to 'expressly designate' the amount of coverage requested is by electing a specific dollar amount on an insurance application."  609 Pa. at 396, 15 A.3d at 901 (citing Lewis, 568 Pa. at 123, 793 A.2d at 153).

Orsag did not purport to overrule Larrimore, and no appellate decision since then has construed it as doing so.

In 2014, my colleague Judge Jones presided over a case with an even more explicit election of reduced coverage. See Henderson v. Charter Oak Fire Ins. Co., No. 12-4363, 2014 WL 1218743, at *9 (E.D. Pa. Mar. 21, 2014) aff'd sub nom. Henderson v. Charter Oak Fire Ins., No. 14-1850, 2015 WL 4072769 (3d Cir. June 26, 2015).  In Henderson, the insurer's application contained a section titled "Uninsured and Underinsured Motorists Selection/Rejection," which explained:

> You may reject Uninsured or Underinsured Motorist Coverage, or you may purchase Uninsured or Underinsured Motorist Coverage with limits equal to your Bodily Injury Liability Limits or select lower limits, but not less than the minimum limits required by statute ($15,000 each person/$30,000 each accident; or $35,000 each accident, combined single limit) . . . .

Id. at *3.  The form also included the following notice:

> **NOTE:** Your automobile liability or motor vehicle liability policy will *automatically* include Uninsured and Underinsured Motorists Coverage at the same limits as the policy Bodily Injury Liability Limits *unless* you reject the coverages or select lower limits on this application.

Id.  Another section clearly titled, "Selection of Lower Limits of Underinsured Motorists Coverage," instructed the applicant, "Please make selection below *only* if you wish to select Underinsured Motorist Coverage at limits lower than your policy Bodily Injury Limits." Id.  The application then listed various options, the first of which offered UM coverage "at the minimum limits."  The insured circled this option, and handwrote "$35,000." Id.  Based on these circumstances, even the plaintiffs conceded that defendant's insurance application represented a valid selection.[7]  In reaching his decision, Judge Jones relied on the Superior Court's holding in Hartford Ins. Co. v. O'Mara that Section 1734 does not dictate particular language that must be employed in order to reduce UM and UIM coverage limits.  907 A.2d 589, 603 (Pa. Super. Ct. 2006) (finding a form "viewed as a whole," that included (1) various notices about UM/UIM

---

[7] The dispute in Henderson concerned whether the insurance company's supplementary application for renewal of this policy continued to comply with the PA MVFRL. Id. at *4.

11

coverage, (2) a checked box next to "minimum amount available ($15,000 per person/$30,000 per accident)" for UM and UIM coverage, and (3) a signature at the bottom, satisfied the requirements of Section 1734).

   C. *Does Defendant's Summary Form Satisfy the Requirements of PA MVFRL?*

Here, the Summary Form and other state-specific forms do not provide the explicit election of reduced UM coverage required by the statutory scheme. Road-Con signed four documents with regards to UM coverage, none of which were sufficiently explicit to elect UM coverage less than that for bodily injury. This is a close case. In contrast to Orsag and Henderson, where unequivocal language, clearly checked boxes, and circled list options left little doubt about whether the insured knowingly and purposefully elected to reduce UM/UIM coverage, Road-Con signed three Pennsylvania forms that literally did not allow for an election of reduced coverage to a specified amount, as well as a summary form that only attested to the fact that Road-Con reviewed those deficient state-specific documents. The Summary Form, by its own terms, does not purport to serve as an election of reduced UM coverage. In fact, the Summary Form explicitly requires the named insured to review and sign state-specific selection or rejection forms. See Defendant's Exhibit C ("THIS SUMMARY FORM IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION FORM FOR UM AND UIM COVERAGE. YOU ARE REQUIRED TO DO SO. . . . I acknowledge that I have reviewed each individual state's selection/rejection form, I have made the elections indicated . . ."). Moreover, the Summary Form makes clear that if the state-specific forms are not signed and returned prior to the Policy inception dates, it will result in the Policy being issued with different limits *imposed by state law*. This key language is repeated, almost verbatim, in Defendant's cover letter. Thus, the Summary Form itself acknowledges that if the

named insured does not sign the state-specific reduction of UM and UIM coverage forms, state law will control the amount of UM and UIM coverage.

Another District Judge, applying Kansas law, confronted Zurich's Summary Form in 2008 and came to essentially the same conclusion. See Stemple v. Zurich Am. Ins. Co., 584 F. Supp. 2d 1304, 1311 (D. Kan. 2008) ("The Summary Form does no more than affirm elections made on the individual state forms. Thus, because no individual state form was completed . . . , there was no election to affirm."). Zurich certainly knew therefore, that its summary form had previously been held inadequate for purposes of electing or rejecting specific coverage amounts.

I also find it significant that specific state forms are referenced and attached to the Summary Form, showing that Zurich utilizes tailored state forms in an attempt to ensure that each state's individual laws are observed. For instance, for the Indiana state-specific form, Zurich encloses a "Rejection of Uninsured Motorists Coverage and Underinsured Motorists Coverage or Selection of Lower Limit of Liability." See Defendant's Exhibit C. The form explains the relevant law for UM/UIM coverage in detail, and allows the insured to mark an X in the box for the option(s) selected, which includes the specific amount of UM/UIM coverage chosen, in addition to signing and dating the form. Id.[8] Likewise, the Summary Form explicitly establishes that for those states marked with an asterisk (like Pennsylvania), the state form "MUST be signed by the First Named Insured." Accordingly, based on the plain meaning of the Summary Form and the surplus of state specific documents attached to it and signed by the named insured, the $35,000 limit for UM/UIM coverage listed for Pennsylvania is not effective absent a concurrent execution of a Pennsylvania-specific form expressly electing reduced UM/UIM coverage in the amount of $35,000. As in Larrimore, I see this as the functional

---

[8] There are many other comparable state-specific forms for those states marked with an asterisk on the Summary Form, including, but not limited to: Alaska, California, Florida, Nebraska, New Jersey, and Virginia. Id.

equivalent of a recognition by Zurich itself that something more is required than the Summary Form alone in order to comply with the Section 1734 writing requirement.

None of Defendant's Pennsylvania-specific forms include an explicit election of reduced UM/UIM coverage. The "Pennsylvania Important Notice" is merely informative, certifying that the insured understands the availability of specific insurance benefits required under Pennsylvania law. The other two state-specific forms alter the terms of the Policy, but only in regards to rejecting stacked UM and UIM coverage limits. In fact, the rejection of stacked coverage forms are clear that by signing the waiver, the named insured "knowingly and voluntarily" rejects stacked limits and understands that the policy premium "will be reduced" if stacked coverage is rejected. Id. Had Defendant included a Pennsylvania form that reduced UM/UIM coverage to $35,000 in terms as explicit and clear as the rejection of stacked coverage forms, just as Zurich did for so many other states, it would have left no room for confusion, and, in turn, complied with Pennsylvania law. See Lewis, 568 Pa. at 123, 793 A.2d at 153.

In simple terms, Pennsylvania's statutory scheme spells out an explicit, highly technical, and rigorous standard, of which Zurich was clearly aware. It took pains to meet the specific requirements of other states, but not Pennsylvania. Given that failure, coverage exists as a matter of law, and the resulting burden to be borne by Zurich is one of its own making.

Even if Road-Con intended to reduce its UM coverage, as Defendant argues is evidenced by the Summary Form and attached cover letter, evidence of intent cannot defeat the writing requirement of Section 1734. See Cook, 155 F. App'x at 593–594. Further, any ambiguity presented here must generally be resolved in favor of the insured. See, e.g., Resseguie, 980 F.2d at 231–232. Correspondingly, affording the greatest possible UM coverage advances the specific purpose of Section 1734 of the MVFRL. Id.

Because Defendant failed to comply with the writing requirement of Section 1734 of the MVFRL, "(1) the lower limits allegedly selected by the insured are a nullity; and (2) UM/UIM coverage is deemed to be equivalent to the bodily injury liability limits." Id. at 598 (citing Nationwide Mut. Ins. Co. v. Heintz, 804 A.2d 1209, 1216 n.7 (Pa. Super. Ct. 2002)); see also Larrimore, 987 A.2d at 743.  Accordingly, the lower UM limit of thirty-five thousand dollars ($35,000) referenced in the Policy is a nullity, and Plaintiff's UM coverage is equal to the Policy's bodily injury liability limits of one million dollars ($1,000,000.00).

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied.  An appropriate order follows.


　　　　　　　　　　　　　　　　　　　　　　/s/ Gerald Austin McHugh
　　　　　　　　　　　　　　　　　　　　United States District Court Judge